## In re HARVEY.
## Patent Appeal No. 3326.

Court of Customs and Patent Appeals.
June 12, 1934.

Harold E. Stonebraker, of Rochester, N. Y., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

Mary J. Harvey, "executrix of the estate" of William F. Harvey, deceased, filed an application in the United States Patent Office for a patent upon certain improvements in porcelain insulators of the type having a multiplicity of skirts or projecting flanges, and such as are often used in electric insulation.

The examiner rejected claims 7 and 8 of the application, which are as follows:

"7. As an article of manufacture, a one-piece porcelain insulator formed by the wet process plunger method comprising a central body portion, and a plurality of flanges extending laterally therefrom in spaced relation along the body portion substantially as set forth.

"8. As an article of manufacture, a one-piece porcelain insulator formed by the wet process plunger method comprising a central body portion, a plurality of flanges extending laterally therefrom in spaced relation along the body portion, and a petticoat depending from one or more of said flanges substantially as set forth."

These were rejected upon reference to the following:

Plimpton, 1,328,687, January 20, 1920.

British patent 281,550, December 8, 1927.

The examiner also added to the record:

Harvey, 1,779,811, October 28, 1930.

This last reference was a process patent, issued to the decedent of the applicant on October 28, 1930, on an application filed January 3, 1928. This patent contained seven claims, claim 6 being illustrative and as fol-

lows: "6. The method of making a one-piece wet process insulator consisting in first forming one portion of the insulator by pressing it into a mold, retaining the mass in said mold and protecting the opposite side of said formed portion by a sectional mold while subsequently forming another part of the insulator integral with the first mentioned part by applying pressure toward said sectional mold and the first named portion."

After the rejection by the examiner, a number of affidavits were filed by the appellant, the substance of which is that, prior to the invention of the appellant, the method of making one-piece porcelain insulators was by casting, and that, in casting, it was necessary to use a liquid clay mixture which, when it hardened, did not have the same durability and lasting qualities as would have been the case if a wet process clay had been used; that the porcelain best suited for high-tension insulators contains approximately 30 per cent. ball clay, 20 per cent. china clay, 30 per cent. feldspar, and 20 per cent. flint, and that such a mixture cannot be used in casting. These affidavits also describe the various methods of making insulators by such casting methods.

The Board of Appeals affirmed the decision of the examiner, and the appellant brings the matter here for review.

We have examined the references. The reference Plimpton is a patent on an improvement in insulator supports, and shows a device for an attachment of an insulator to a cross-arm. In this disclosure, the patentee shows by his drawings a one-piece insulator with successive depending skirts on the exterior thereof. In describing this insulator, the patent states: " * * * The threaded upper end or thimble engaging portion 6 cooperates with the insulator 7, which is of the usual type, and formed of porcelain or other non-conducting material." ·

The reference Berg, British patent 281,-550, shows an insulator for supporting electric cables carrying high voltages, and more particularly describes the method of attachment of such insulator to its support. However, the important feature of the reference is that the patentee shows a one-piece insulator with two depending, spaced skirts on the exterior thereof, the upper skirt having dependent from the interior thereof what is known in the art as a petticoat. The patentee describes this insulator as being "constructed from porcelain or a suitable electrically non-conductive material."

On comparison of the shape and form of Berg's insulator with that shown by the application here, no material difference appears.

It appears, therefore, that the prior art discloses one-piece porcelain insulators of exactly the same type as that shown here, and that there has been already issued to the appellant's decedent a patent covering his process for making the insulator upon which she here seeks a product patent.

We are of opinion the Board of Appeals did not err in refusing the application of appellant. It is argued that the claims of the appellant should be read with reference to the material of which the insulator is made, and that the court should consider, as an element of patentability, the language of the claims, "formed by the wet process plunger method." It is argued that the difference in the material of which appellant's insulators and those of the prior art are made is sufficient to make appellant's claims describe patentable subject-matter, because the product produced is new. In support of this claim, the familiar principle of law is announced that where it is necessary, in order to properly describe a product, to refer to the process by which the product is made, this may be done; that such is the case here, and, accordingly, that the claims must be considered with the wet process method in mind.

The difficulty with this position is that in neither the Plimpton nor the Berg reference is the material of which the insulators are formed described in any other way than as porcelain. Such porcelain may be, so far as these references show, of the exact and precise composition which is preferred by the appellant here in her specification. In addition, it will be observed that the claims here in issue do not recite any particular composition of clay or porcelain which is used. Therefore, it does not appear that patentability may be claimed in this respect.

The process which Harvey employed in making this insulator was new and inventive, and because of this the Patent Office granted him a process patent. However, as shown by the references here, the product which was produced was simply an insulator such as was known to the prior art. It was no different, so far as the record shows, and so far as the claims here in issue extend, from those known in the prior art. It quite frequently happens that an article well known in the art may be constructed by a new and patentable process. In re Lawson, 39 F.(2d) 667, 17 C. C. P. A. (Patents) 1006.

The case before us much resembles In re Butler, 37 F.(2d) 623, 627, 17 C. C. P. A. (Patents) 810, where claims for an aluminum piston were included in an appli-

cation, which also claimed the method of making the same. The Patent Office denied the claims for the article or product, and this court took the same view of the matter, saying, in conclusion, referring to the cases holding that a product may at times be described by reference to the process of producing it: "It may be the law that this rule has proper application in cases where it is obvious that the inventor has created an article of manufacture which is *a new thing*, a useful thing, and embodies invention, and where such an article cannot be properly discriminated, in a claim, from the prior art otherwise than by reference to the process of producing it. The facts in the instant case do not disclose a situation where it is *obvious* that the applicant by molding a wavy slot, instead of sawing it, has produced a new, useful thing embodying invention."

A similar case is In re Holmes, 63 F.(2d) 642, 20 C. C. P. A. (Patents) 899. In this case the alleged invention consisted of a welded pipe. This court held that while the process by which the pipe was made was patentable, it did not necessarily follow that the product was, and affirmed the decision of the Board of Appeals in finding the claims not patentable.

The decision of the Board of Appeals is affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate.